# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY WHITFIELD<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>CHARTIERS VALLEY SCHOOL DISTRICT, and CHARTIERS VALLEY SCHOOL BOARD<br><br>　　　　　　　Defendants. | Civil Action No. 2:09-cv-01084<br><br>Judge David S. Cercone<br><br><br><br>JURY TRIAL DEMANDED |

### PLAINTIFF'S LEGAL MEMORANDUM IN SUPPORT OF HER MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff Dr. Tammy Whitfield in this First Amendment lawsuit is a dedicated public school employee who has spent twenty-years serving the students and taxpayers of Chartiers Valley School District.  Starting as a substitute teacher, Dr. Whitfield, has spent her entire career at Chartiers Valley, finally achieving the position of Assistant Superintendent in 2004. Unfortunately for Dr. Whitfield, Defendants have decided to overlook this record of distinguished service to the students of their school district in order to unreasonably and unconstitutionally punish Dr Whitfield for her truthful and necessary testimony against another, more favored, school employee.  Their outrage at her testimony against the school's winning basketball coach was very public and very nasty.  School Board members sat in the audience during her testimony and openly booed and hissed. *See Verified Complaint* ¶ 32.  Indeed, at the conclusion of Dr. Whitfield's testimony, board member Jeff Choura, who later voted against

renewing Dr. Whitfield's employment contract, stood up and shouted that Dr. Whitfield was lying. *Id.* at ¶ 35. Two days before the board made the decision in question, Mr. Choura, a self admitted "big-fan" of Coach McConnell, disclosed that Dr. Whitfield would not receive a new contract because of her testimony against Coach McConnell. *Id.* at ¶ 45.

Defendants cannot retaliate against Dr. Whitfield simply because of disagreement with her constitutionally-protected testimony. Likewise, Defendants cannot then seek to hide their retaliatory motives behind the otherwise constitutional argument that the school board did not have adequate time to review Dr. Whitfield's contract. If this argument were real, and not simply pretext, why have Defendants made no attempt to negotiate a new contract with Dr, Whitfield since May 29, 2009? If there were real performance issues then perhaps this argument might hold water. However, Defendants cannot seek to hide behind a constitutionally-permissible argument or reason when their true and public motive was the unconstitutional suppression of protected, but unpopular, testimony.

**FACTS**

Plaintiff incorporates by reference the factual allegations contained in the *Verified Complaint*.

**ARGUMENT**

In making the determination of whether or not to grant a motion for a preliminary injunction, a Court must weigh four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by the denial of relief; (3) whether granting preliminary relief will result in even greater harm to the non-moving party; and (4) whether granting preliminary relief will be in the public interest. *American Civil Liberties Union v. Reno*, 217 F.3d 162, 172 (3d Cir. 2003) (citations omitted).

Because irreparable harm is legally presumed in First Amendment cases,[1] the balancing of these four factors in the instant case clearly weighs in favor of granting of Dr. Whitfield request injunction.

**I. Plaintiff is Highly Likely to Prevail on the Merits of Her First Amendment Retaliation Claim Because Defendants Declined to Renew Her Employment Contract Because She Testified Against Another School Employee That was Favored by Defendants.**

Unlike typical preliminary injunction jurisprudence, Plaintiff notes that in First Amendment cases, it is the Defendants who carry the burden of both proof and persuasion. *Phillips v. Borough of Keyport*, 107 F.3d 164, 172-73 (3d Cir. 1997) (en banc), *cert denied*, 522 U.S. 132 (1997) (noting that when a legislative body [a school board] acts to restrict speech, that body has the burden of proving that it is acting in a constitutional manner); *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000) ("When the government restricts speech, the Government bears the burden of proving the constitutionality of its actions") (citations omitted).

Defendants cannot show their displeasure with Dr. Whitfield's testimony against Coach McConnell by refusing to renew her employment contract. Although Defendants ordinarily are in the position to, and have the right to, determine whether or not to renew a school administrator's contract (assuming they follow the specifics of the contract and the requirements

---

[1] By way of a quick illustration of this legal presumption, *see* Transcript of Court's Order in the Preliminary Injunction Hearing in 2:06-cv-1685, January 10, 2007, p. 11, before Chief Judge Donetta Ambrose: "The second consideration for a determination of whether or not to issue a preliminary injunction is whether not Plaintiff will suffer irreparable harm if the injunction is not issued. The law is clear. The loss of First Amendment freedoms even for the smallest amount of time constitutes irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (The transcript of this hearing is attached to the Motion herein as Exhibit D). *McNeilly v. City of Pittsburgh* was also a First Amendment retaliation case in which the Plaintiff suffered a demotion and loss of salary and benefits after reported alleged corruption. Notably, the Court did not engage in an analysis of possible monetary relief but focused instead on the irreparable harm always suffered with the loss of First Amendment freedoms.

of Pennsylvania's Public School Code), Defendants cannot refuse to do so in retaliation for the administrators engagement in constitutionally-protected conduct. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech."), citing *Mt. Healthy Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 283 (1977). In determining whether an individual has been the subject of retaliation, "the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech predates government action affecting the individual." *Id.* citing *Mt. Healthy*, 428 U.S. at 283.

To prevail on a First Amendment retaliation claim, Plaintiff must prove that: (1) she engaged in constitutionally-protected activity; (2) the government responded with retaliation; and (3) the protected activity caused the retaliation." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004) (citations omitted).

    A.  **Plaintiff Engaged in Constitutionally-Protected Activity By Testfying at the Appeal Hearing of Coach Timothy McConnell**.

Teachers (like policeman and lawyers) "are not relegated to a water-down version of constitutional rights." *Gasparinetti v. Kerr*, 568 F.2d 311, 316 (3d Cir. 1977) (quoting *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967)). The U.S. Supreme Court has consistently held that "the First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 416 (2006). Indeed, "the importance of promoting the public's interest in receiving the well-informed views of government employees," is such that "First Amendment interests at stake extend beyond the individual speaker." *Id.* at 417. These First Amendment interests "limit[] the ability of a public employer to leverage the

employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Id*.

Following the Supreme Court's decision in *Garcetti*, the U.S. Court of Appeals for the Third Circuit established a test for determining whether a public employee's speech is constitutionally protected. The inquiry turns on whether: (1) the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement made. *Hill v. Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (citing *Garcetti*, 547 U.S. at 419). After *Garcetti*, the question of whether or not a public employee speaks as a citizen (and therefore their speech is afforded constitutional protection) turns on whether or not the communication was made pursuant to the employee's official job duties. *Garcetti*, 547 U.S. at 419. The application of the above test to Dr. Whitfield's testimony demonstrates that the testimony in question is entitled to First Amendment protection.[2] First, she was speaking as a citizen when she gave testimony at a public school board appeal hearing, because testimony *can never be considered* pursuant to official job duties. Second, her testimony constituted speech on a matter of public concern, because testimony (whether compelled by subpoena or voluntary) before an adjudicatory body is always a matter of public concern, and furthermore, because Dr. Whitfield's testimony regarding the whether or not another school employee fulfilled the terms of his contract concerns a matter of importance to taxpayers of her school district. Finally, Chartiers Valley School District did not have an adequate justification for failing to renew Dr. Whitfield's contract for testifying against Coach

---

[2] It is black letter law that "a public employee's appearance as a witness, even in the absence of actual testimony, is 'speech' under *Pickering*." *Green v. Philadelphia Housing Authority*, 105 F.3d 882, 885-86 (3d Cir. 1997) (citing *Pro v. Donatucci*, 81 F.3d 1283, 1291 (3d Cir. 1996).

McConnell because testimony regarding possible misconduct by a public school employee far outweighs any interest by the school district in keeping such personnel matters confidential.

### 1. **Plaintiff's Testimony Was Not Made Pursuant to Her Official Job Duties.**

Although the Supreme Court's recent decision in *Garcetti v. Ceballos* places additional restricts on public-employee speech, these restricts apply only to speech that "owes its existence to a public employee's professional responsibilities." *Id*. Reasoning that government employers should be able to exercise "control what the employer itself has commissioned or created," the Court crafted a rule to ensure that government employers would be able to direct the performance of their employees official communications. *Id.* The question, however, is not whether the speech was made during the employees work hours, or whether it concerns the subject matter of his or her employment. *Id*.

Because of the relative newness of the *Garcetti* decision, few Courts of Appeal have been confronted with the issue of whether truthful testimony, even if arising out of an employee's official responsibilities, should constitute protected speech. The Third Circuit Court of Appeals, however, has been confronted with this exact issue, and was crystal clear in ruling that "the act of offering truthful testimony is the responsibility of every citizen, and the First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by one's status as a public employee. That an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully." *Reilly v. City of Atlantic City,* 532 F.3d 216, 231 (3d Cir. 2008). The Court reasoned that "[w]hen a government employee testifies truthfully, s/he is not 'simply performing his or her job

duties,' rather, the employee is acting as a citizen and is bound by the dictates of the Court and the rules of evidence."³ *Id*.

Advancing this argument to its natural conclusion, the Seventh Circuit recently concluded retaliation claims based on testimony "fall outside *Garcetti*." *Fairley v. Andrews*, 2009 WL 2525564 *6 (7th Cir. August 20, 2009). Writing for the Court, Judges Easterbrook, Wood, and Posner ruled that:

> [t]he Jail likely requires guards to testify on its behalf and pays them for time at Court. Testifying against the Jail might not be part of the job, but that doesn't matter. Even if offering (adverse) testimony is a job duty, courts rather than employers are entitled to supervise the process. A government cannot tell its employees what to say in court, see 18 U.S.C. § 1512, nor can it prevent them from testifying against it.

*Id*.

Accordingly, Dr. Whitfield's truthful testimony before the school board hearing examiner on November 1, 1990, falls outside of *Garcetti*. *Reilly*, 532 F.3d at 231; *Fairley*, 2009 WL 2525565 at * 6. Under existing precedent established by the Third Circuit, even if Dr Whitfield's testimony could be considered pursuant to her official job duties (and Plaintiff is not conceding that it was), such testimony would still be entitled to protection under the First

---

³ Before any argument is made that Plaintiff's testimony before the school board was not "bound by the Rules of Evidence," and therefore is not covered by the logic advanced here, it should be noted that in reaching the above conclusion, the Court in *Reilly* cited (with approval) to a case out of the Seventh Circuit, *Moralas v. Jones*, in which a police officer's civil deposition testimony (not bound by the rules of evidence) "'was unquestionably not…part of what he was employed to do,' and thus it was protected even though the officer testified about speech that was made pursuant to his official duties." *Reilly*, 532 F.3d at 230 (quoting *Moralas v. Jones*, 494 F.3d 590, 598 (7th Cir. 2007)). Also important to note is that while the Ninth Circuit Court of Appeals recently decided that police officer testimony before a grand jury charged with investigating police corruption was pursuant to the officers official job duties, and thus not protected under the First Amendment, the Court also acknowledged that other public employees, such as accountants, etc., do not "explicitly, or even impliedly," have an official duty to testify. *Huppert v. City of Pittsburg*, 2009 WL 2151344 * 12 (9th Cir. July 21, 2009).

Amendment. *Id*. When Dr. Whitfield testified she testified as a citizen, and it is immaterial whether her position as Assistant Superintendent of Chartiers Valley School District provided her with the information that made her testimony logical and necessary. *Id*.

### 2. **Plaintiff's Testimony Was A Matter of Public Concern.**

The Third Circuit has held that testimony—whether in court, in a deposition, or before an adjudicatory body—regardless of the actual content of that testimony, is, as a matter of law, of public concern. *Green*, 105 F.3d at 887; *Pro*, 81 F.3d at 1291. In fact, testimony is always a matter of public concern regardless of whether the witness appeared voluntarily or was compelled by subpoena. *Id*. Accordingly, as a matter of law, Dr. Whitfield's November 1, 2006 testimony is a matter of a public concern.

Furthermore, the Third Circuit has categorized speech "implicat[ing] the discharge of public responsibilities by an important government office, agency, or institution" as speech addressing a matter of public concern. *Sanguigni v. Pittsburgh Bd. of Pub. Educ.,* 968 F.2d 393, 397-98 *(3d Cir.1992)* (citing cases involving speech that touched on the pressure to work on political campaigns, the allocation of funds to certain school programs, government corruption, and the lowering of academic standards and its effects); *see also Holder v. City of Allentown,* 987 F.2d 188, 195 (3d Cir.1993) (stating that speech is on a matter of public concern where "the speaker seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials" (quoting *Connick v. Myers,* 461 U.S. 138, 148 (1983)). Finally, the content of speech is on a matter of public concern where it "relate[s] primarily to the way in which a government offices [are] serving the public." *Sanguigni,* 968 F.2d at 398 (citing *Czurlanis v. Albanese,* 721 F.2d 98 (3d Cir.1983) (in which a county employee criticized the

8

state and county governments at a meeting of the county's governing body regarding how he thought those governments were wasting taxpayer's money)

Dr. Whitfield testified before the school board appeal hearing that Chartiers Valley Dean of Students and Boys Basketball Coach Timothy McConnell had not complied with the terms of his contract requiring him to attend university classes and obtain certification. The state required that McConnell be certified to hold the Dean of Students position. McConnell's lack of the necessary certification could subject the school and ultimately the taxpayers of the school district to fines by the state.[4] Accordingly, because Dr. Whitfield's testimony attempts to bring to light actual wrongdoing and a breach of public trust by one of the school district employees, her testimony touches on a matter of public concern. *Holder,* 987 F.2d at 195.

### 3. **The Public's Interest in Learning of Wrongdoing and a Waste of Tax Dollars By a Public Official Outweighs the School District's Interest In Maintaining the Privacy of Such Information.**

In testifying about Coach McConnell's disregard for the terms of his employment contract and the potential consequences of that disregard for the school district and its taxpayers, Dr. Whitfield spoke as a citizen on a matter of public concern. Therefore, the Defendant's refusal to renew her contract as assistant superintendent was unconstitutional unless Defendant's "had an adequate justification for treating [Dr. Whitfield] differently from any other member of the general public." *Garcetti*, 547 U.S. at 417; *Hill*, 455 F.3d at 242. To determine whether Defendants had an adequate justification for disciplining her for her testimony, the Court must consider whether Dr. Whitfield's and the public's "interests in the speech outweigh the [Defendant's] countervailing interests in the 'efficiency and integrity in the discharge of official

---

[4] It should be noted by the Court that McConnell's lack of certification ultimately did subject the school district to fines totally $11, 824.80. Although a settlement was ultimately achieved on this issue, the school district and the taxpayers were still required to pay about fifty (50) percent of the above total.

duties, and [in maintaining] proper discipline in the public service.'" *McGreevy v. Stroup*, 413 F.3d 359, 365 (2005) (quoting *Connick*, 461 U.S. at 150-51). The Defendants "bear[] the burden of justifying the [termination], which 'varies depending upon the nature of the employee's expression.'" *Baldassare v. New Jersey*, 250 F.3d 188, 198 (3d Cir. 2001) (quoting *Watters v. City of Philadelphia*, 55 F.3d 886, 895 (3d Cir. 1995)). Because the speech at issue in this case "involve[s] government impropriety[, which] occupies the highest rung of First Amendment protection," *McGreevy*, 413 F.3d at 365 (quoting *Swineford*, 15 F.3d at 1274), the City "bears a truly heavy burden." *See, e.g.*, *id.* ("The 'more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made.'") (quoting *Hyland v. Wonder*, 972 F.2d 1129-139 (9th Cir.1992)).

      Defendants cannot meet this burden. As an initial matter, the Defendants can claim no legitimate interest in preventing its school administrators from testifying truthfully as to contract status and compliance of school employees. Although Defendants may have an interest in protecting confidential employee information, such an interest cannot be reconciled with the public nature of a disciplinary appeal hearing held before a hearing examiner and in front of the entire school board. Further, Dr. Whitfield did not use her testimony at Coach McConnell's appeal hearing as a forum to divulge any confidential information about Coach McConnell.

      It is difficult to comprehend how Dr. Whitfield's testimony regarding Coach McConnell's abject failure to comply with the certification requirements in his employment contact could disrupt the function of the school. This is especially true since Coach McConnell chose to appeal his suspension and the school has set in place a public hearing to hear that appeal—a public hearing in which the fact leading to the discipline would obviously be divulged.

But even assuming that Defendants had in interest in preventing the disclosure of the actual details of school employees' contracts, that interest is not dispositive:

> [I]t would be absurd to hold that the First Amendment generally authorizes * * * officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office * * * . [T]he balancing test articulated in *Pickering* is truly a balancing test, with office disruption or **breached confidences** being only weights on the scales.

*Baldassare*, 250 F.3d at 200 (emphasis added) (quoting O'Donnell, 875 F.2d at 1062).

Weighing in Dr. Whitfield's favor is the Pennsylvania legislature's support, expressed in the state Whistleblower Law, for public employees who make good-faith reports of wrongdoing to appropriate governmental authorities. *See* 43 P.S. § 1423; *Dennison v. Pa. Dept. of Corrections*, 268 F. Supp. 2d 387, 398 (M.D. Pa..2003) (Pennsylvania Whistleblower Law provided employee with "approved avenue for disclosing his concerns regarding racial discrimination in parole determinations"). Indeed, in enacting the Whistleblower Law, which protects public employees who report wrongdoing or waste from retaliation by their employers, the state has put its foot on the scale: The law expresses the Commonwealth's belief that the public's interest in learning about governmental waste and wrongdoing outweighs any interests of a government employer in preventing the disclosure.

But even in the absence of the Whistleblower Law's legislatively enacted balancing of harms, Dr. Whitfield's testimony would still be constitutionally protected. Allegations of governmental misconduct receive the greatest First Amendment protection. *See McGreevy*, 413 F.3d at 365. On the other side of the scale, there is no evidence that the disclosure disrupted the functioning of the school district. Accordingly, the school district's possible interest in maintaining the confidentiality of that school employee contract details is significantly outweighed by the public's interest in the disclosure of the misconduct associated with those

11

contracts. *Cf. Baldassare*, 250 F.3d at 197 (in striking balance between employee's speech interests and government employer's interest in efficient workplace, "the public's interest in the expression may be significant").

B. **Defendants Retaliated Against Plaintiff For Her Testimony By Failing to Renew Her Contract as Assistant Superintendent.**

"A public employer adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment right." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (citations omitted). It is well-established that a case for First Amendment retaliation can be made even if the public employee had "no entitlement to promotion, transfer or rehire." *Rutan v. Republican Party*, 497 U.S. 62, 72 (1990). In fact, the U.S. Supreme Court has explicitly held that public employees "lack of a contractual or tenure right to re-employment was immaterial to his First Amendment claim." *Id*. citing *Perry v. Sindermann,* 408 U.S. 593, 596-98 (1972). The lack of a legal entitlement to the renewal is "beside the point" in a First Amendment case. *Id*. The question of retaliation hinges on whether the alleged action taken by the public employer was "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan*, 203 F.3d at 235.

The failure to renew Dr. Whitfield's contract as Assistant Superintendent is a classis example of retaliatory conduct by a public employer, and as such, is clearly actionable under the First Amendment. See *Lapinski v. Board of Educ. of Brandywine School Dist.*, 163 Fed.Appx. 157, 159 (3d Cir. 2006) ("appellees' failure to renew Lapinski's employee contract was 'sufficient to deter a person of ordinary firmness from exercising his First Amendment rights'" quoting *Suppan*, 203 F.3d at 235). Defendants cannot undermine Plaintiff's retaliation claim by

simply arguing that Dr. Whitfield had no legal right to a renewal of her contract. *Id.* citing *Brennan*, 350 F.3d at 419; *Baldassare*, 250 F.3d at 207.

### C. Dr. Whitfield's Testimony Against Coach Tim McConnell Caused the Defendants Not to Renew Dr. Whitfield's Employment Contract and Defendants Have No Separate, Legitimate, Non-pretextual Reason for Their Action.

In a First Amendment retaliation case, the plaintiff has the initial burden of showing the engagement in constitutionally protected activity was a substantial or motivating factor in the relevant decision. *Mt. Healthy*, 429 U.S. at 287, citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 270-71 (1977).[5] Once the plaintiff carries this burden, the burden then shifts to the defendant to show "by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct." *Id.* In this framework, Plaintiffs are "not required to show that the decision was 'motivated solely by single concern, or even that a particular purpose was the dominant or primary one.'" *Suppan*, 203 F.3d at 236, citing *Village of Arlington Heights*, 429 U.S. at 268-270.

Even at this preliminary stage of the proceedings, Dr. Whitfield has provided ample evidence so that the fact finder could conclude that her appeal hearing testimony was a substantial or motivating factor in the Defendants decision not renew Dr. Whitfield's employment contract. Defendants and school board members Jeff Choura and Bridget Kelly

---

[5] Although the Seventh Circuit Court of Appeals in *Fairley v. Andrews*, 2009 WL 2525564 determined that as a result of the recent U.S. Supreme Court decision of *Gross v. FBL Financial Services, Inc.* 129 S. Ct. 2343 (2009), "but for" causation was now the standard in all retaliation cases based on federal law, the Third Circuit has not yet ruled this way, and Plaintiff respectfully disagrees with the position taken by the Seventh Circuit. In *Gross*, Justice Thomas, writing for the majority, concluded that because of the specific statutory text of the ADEA, "but for" causation was the appropriate burden in ADEA claims. *Gross*, 129 S.Ct. at 2351. In answering a challenge by Gross about the application the "burden-shifting" framework in other contexts, the Court specifically notes that "the constitutional cases such as *Mt. Healthy* have no bearing on the correct interpretation of ADEA claims, which are governed by statutory text." *Id.* at 2353 n. 6.

13

(two (2) of the six (6) board members who voted to open up Dr. Whitfield's contract) sat in the audience during the testimony and audibly booed and hissed. *See Verified Complaint* ¶ 32. Furthermore, board member Choura stood up at the end of Dr. Whitfield's testimony and asked to be heard, and that he wanted the record of the hearing changed because Plaintiff was "lying." *Id.* at ¶¶ 33-37. On May 26, 2009, Chartiers Valley School District Assistant Facilities Director Art Turner informed Dr. Whitfield that Mr. Choura had stated Dr. Whitfield would not be receiving a new contract because of her testimony against Coach McConnell. *Id.* at ¶ 45. On May 28, 2009, the date Defendants informed Dr. Whitfield her contract was not being renewed, it was board members Choura and Kelly that made and seconded the motion to open the contract. *See Plaintiff's Exhibit M*, p. 10. Moreover, on June 9, 2009, Board President Patty Figorski informed Superintendent Anthony Skender that Dr. Whitfield was banned from all executive session meeting of the board because of her decision to hire a lawyer in relation to the non-renewal of her contract. *See Verified Complaint* ¶ 50. Finally, at an executive session meeting of the board on August 11, 2009, board member Tom Galluze openly declared that he would not renew Dr. Whitfield's contract because of her decision to consult and hire a lawyer. *Id.* ¶ 51.

To rebut this showing that her testimony and/or decision to hire a lawyer and contemplate the instant lawsuit was a substantial or motivating factor in the Defendants decision not to renew her contract, Defendants would have the burden to show "by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287. Essentially, under *Mt. Healthy*, Defendants would have to show that the decision to open up Dr. Whitfield's contract was totally unrelated to her testimony or lawsuit. Defendants, however, have openly stated that their decision to open the contract had nothing to do with Dr. Whitfield or her performance as the Assistant Superintendent. *See Plaintiff's Exhibit*

14

*M*, pp. 10-11.  In other words, because Defendants own admissions make clear that the failure to renew her contract was not based on her work or performance as the Assistant Superintendent at Chartiers Valley,  Defendants are effectively estopped from now offering up any work-related argument that Defendants would have made this decision not to renew her contract even in the absence of Dr. Whitfield's testimony or lawsuit.  Defendants have offered no such reason to this point and any decision now related to her work or performance would be pre-textual.[6]

### II. **Plaintiff Will Suffer Irreparable Harm if the Court Declines to Issue This Injunction.**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably *constitutes irreparable injury*."  *Elrod v. Burns*, 427 U.S. 347, 373-374 (1976) (emphasis added).  *See also, e.g.*, *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989); *American Civil Liberties Union v. Reno*, 217 F.3d 162, 180 (3d Cir. 2000) (generally in First Amendment challenges plaintiffs who meet the merits prong of the test for a preliminary injunction "will almost certainly meet the second, since irreparable injury normally arises out of the deprivation

---

[6] "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [retaliated]." *Fasold v. Justice,* 409 F.3d 178, 185 (3d Cir.2005) (quoting *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (alteration added)); *see also Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1065-72 (3d Cir.1996) (en banc). As the Supreme Court recognized in *Reeves*:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.' Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147, (internal citations omitted).

of speech rights"); 135-36 (3d Cir. 1998) (same);  11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").  In other words, "the assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits." *Hohe*, 868 F.2d at 72-73.  Irreparable harm can be show by "a chilling effect on free expression." *Id*. quoting *Dombrowski v. Pfister,* 380 U.S. 479, 487, (1965).  "It is 'purposeful unconstitutional [government] suppression of speech [which] constitutes irreparable harm for preliminary injunction purposes.'" *Id*. citing with approval *Goldie's Bookstore v. Superior Ct.,* 739 F.2d 466, 472 (9th Cir.1984).

Defendants' decision not to renew the employment contract of Dr. Whitfield, a much-beloved 21-year employee for the school district, sends an unmistakable message not only to her, but also to all school district employees: keep your mouth shut and don't testify negatively against fellow employees (even if that testimony is truthful) if you want to retain you job with the district.  Unless this Court grants the requested preliminary injunction to enjoin the Defendants' from ending Dr. Whitfield's employment on October 31, 2009, the right of Plaintiff—and the rights of all school district employees—to comment and testify on matters of public concern will be chilled.

### III.     Defendants Will Suffer No Irreparable Harm if This Injunction Is Issued.

Defendants can point to no evidence that they (or the children of the school district) will be irreparably harmed if the pending termination of Plaintiff is postponed pending the resolution of this lawsuit.  Plaintiff has a distinguished twenty-one-year history with the Chartiers Valley School District, including five years as the Assistant Superintendent.  Defendants own words at

the board meeting opening up Dr. Whitfield's contract belie any argument to the contrary.[7] Nothing she has done and nothing Defendants can point to undermine her ability to perform her and the school board's daily or critical tasks.

And because the Defendants are a governmental unit and its agents, they have no legally cognizable interest in suppressing Plaintiff's constitutionally protected free-speech rights.

### IV. Granting the Injunction Will Serve the Public Interest By Averting the Chilling Effect that Defendants' Action, If Not Enjoined, Will Have on All School District Employees.

Because there exists a need for "informed, vibrant dialogue in a democratic society[,]…widespread costs may arise when dialogue is repressed." *Garcetti*, 547 U.S. at 417. The contributions of governmental employees to that dialogue is essential to informing the public about the conduct and operation of publicly funded agencies, as public employees are often the "most likely to have informed and definite opinions" about those operations. *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 572 (1968)).

A "large-scale disincentive to Government employees' expression…imposes a significant burden on the public's right to read and hear what the employees would otherwise have written and said." *United States v. Treasury Employees*, 513 U.S. 454, 470 (1995). Denying the injunction will contravene the public interest because it will deter school employees from testifying truthfully, thus burdening the public's right to hear this important information. The Court should thus grant the injunction to ensure that public discourse on this quintessential government function is not unduly chilled.

---

[7] *See Plaintiff's Exhibit M*, pp. 10-11.

**CONCLUSION**

WHEREFORE, as Plaintiff has satisfied the four pre-requisites for issue of a preliminary injunction, this Court should issue a preliminary injunction to enjoin the Defendants along with the officers, employees, agents and assigns from terminating Plaintiffs contract and employment with Chartiers Valley School District on October 31, 2009.

August 28, 2009

                              Respectfully submitted,

                              HEALEY & HORNACK, P.C.

                              /s/Michael J. Healey_____
                              MICHAEL J. HEALEY, ESQUIRE
                              PA ID 27283

                              /s/Glen S. Downey_____
                              GLEN S. DOWNEY, ESQUIRE
                              PA ID 209461

                              The Pennsylvanian, Suite C-2
                              1100 Liberty Avenue
                              Pittsburgh, PA.  15222
                              412.391.7711
                              412-281-9509 (fax)
                              mike@unionlawyers.net
                              glen@unionlawyers.net

                              Attorneys for Plaintiff